THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BLUE SPRING PARTNERS, LLC,  )
                            )
            *Plaintiff*,    )        No. 23 C 983
      v.                    )
                            )        Chief Judge Virginia M. Kendall
THE INDIVIDUALS, CORPORATIONS,  )
LIMITED LIABILITY COMPANIES,    )
PARTNERSHIPS, AND UNINCORPORATED )
ASSOCIATIONS IDENTIFIED ON      )
SCHEDULE A,                     )
                                )
            *Defendants*.

## OPINION AND ORDER

Plaintiff Blue Spring Partners, LLC's ("Blue Spring"), a maker of swimmable mermaid tails, filed this action against inhzoy, msemis, Nimiya, Runhomal, ZDHoor, and 172 other e-commerce companies ("Schedule A Defendants") alleging trademark and copyright infringement, counterfeiting, and false designation of origin. (Dkt. 1). Following the Court's issuance of a Default Judgment Order, (Dkt. 93), Non-Party Shenzhenshi Hengzhiyi E-Commerce Co., Ltd. ("Shenzhenshi") moved for relief from judgment under Federal Rule of Civil Procedure 60(b). (Dkt. 102). For the foregoing reasons, the Motion [102] is denied.

## BACKGROUND

Blue Spring alleges that Schedule A Defendants advertised and sold products on various Internet storefronts that infringed upon its trademarks and copyrights. (Dkt. 1). Shortly after the case was filed, the Court entered a temporary restraining order ("TRO"). (Dkt. 16). It authorized electronic service pursuant to Rule 4(f)(3), allowing Blue Spring to electronically publish a link to the Complaint, the TRO, and other relevant documents on a website, and send an email with a link to that website to email addresses provided to Blue Spring by third parties. (*Id.* at 9). On March 7,

1

2023, Blue Spring served the TRO on the relevant marketplace platforms and requested "all known contact information and all associated email addresses" of Schedule A Defendants. (Dkt. 118 at 2); (Ex. 1, Dkt. 119-1). Blue Spring contends that, the following day, Amazon notified the Schedule A Defendants operating on its platform—including inhzoy, msemis, Nimiya, Runhomal, ZDHoor ("Amazon Defendants")—of the lawsuit via emails to email addresses registered with the platform and froze the sellers' assets. (Dkt. 119 at ¶¶ 11-12). eBay did the same for the Schedule A Defendants operating on its platform, including Defendant 1st_Fashion. (Dkt. 14); (Ex. 1, Dkt. 120-1).

On March 31, 2023, in accordance with the TRO, Blue Spring served all remaining Schedule A Defendants. (Dkt. 32); (Ex. A, Dkt. 92-3). Blue Spring settled with Defendant 1st_Fashion on April 7, 2023. (Ex. 5, Dkt. 103-1 at 120-24). On August 23, 2023, the Court granted a preliminary injunction against the remaining Schedule A Defendants. (Dkt. 90). On September 7, 2023, after none of the Schedule A Defendants answered or appeared, the Court entered a Default Judgment Order. (Dkt. 95). Blue Spring served the Preliminary Injunction Order, its motion for default judgment, and the Default Judgment Order on Schedule A Defendants, including Amazon Defendants. (Dkt. 118 at 4); (Ex. 2, Dkt. 119-2 at 24-26).

In the Default Order, the Court awarded $100,000 in statutory damages to Blue Spring from each of the "Defaulting Defendants." (Dkt. 95 at 7). The Order specified that the award "shall apply to each distinct Defaulting Defendant only once, even if they are listed under multiple different aliases in the Complaint and Schedule A." (*Id.*). To satisfy the Order, on or around November 14, 2023, Amazon transferred funds in the following amounts from Amazon Defendants to Blue Spring: $100,000 from ZDHoor; $15,998.47 from Runhomal; $75,726.97 from

inhzoy; $100,000 from msemis; and $16,139.32 from Nimiya. (Dkt. 103 at 6); (Dkt. 118 at 4); (Ex. 3, Dkt. 119-3 at 31-42).

On March 12, 2024, each of the Amazon Defendants sent identical emails to Blue Spring stating "Sorry for missing the Case notice in 2023. I contacted the Thoits Law four times in 2024, but no reply. Are you still cooperating with Thoits Law Firm on this case? If not, who should I contact? Please provide the contact email address. I want to check and make settlement." (Dkt. 103-4 at 165, 458); (Dkt. 118 at 4-5); (Ex. 4, Dkt. 119 at 50). Several weeks later, an individual emailing on behalf of Defendant ZDHoor told Blue Spring, "Because of my negligence, I did not pay attention to this case, which led to the discovery of it long after the case was closed." (Ex. 4, Dkt. 119 at 49). On April 10, 2024, an individual named "Sam" emailed Blue Spring from an email with the domain "@zdhoor.com" stating that they represented Amazon Defendants and that Amazon Defendants did not find out about the lawsuit until 2024 when the stores discovered they could not withdraw money from Amazon. (*Id.* at 48-49). Sam then informed Blue Spring that Amazon Defendants are "the same operator" and "operated by the same person." (*Id.* at 45-46). The parties corresponded intermittently until May 20, 2024. (*Id.* at 44).

On September 13, 2024, Attorney Michael Hopkins, counsel for Defendant 1st_Fashion, contacted Blue Spring, claimed that Amazon Defendants were related to 1st_Fashion, and demanded that Blue Spring return the $307,864.76 it collected from Amazon Defendants. (Dkt. 103-1 at 328). He argued that the money from Amazon Defendants was not recoverable under the Settlement Agreement between 1st_Fashion and Blue Spring, which stipulated a settlement amount of $2,000 and released "1st_Fashion and the 1st_Fashion Related Parties" from any further actions or damages. (*Id.* at 328-29). Blue Spring objected to 1st_Fashion's demand, arguing that

3

Amazon Defendants were not parties to or covered by the Settlement Agreement. (Ex. 7, Dkt. 119-7 at 66-69).

On January 24, 2025, Hopkins sent Blue Spring a second letter, now on behalf of Shenzhenshi. (Dkt. 103-1 at 334). Hopkins asserted, for the first time, that Shenzhenshi owns and operates 1st_Fashion and Amazon Defendants as "seller account alias[es]." (*Id.*). He argued that Shenzhenshi is a "Distinct Defendant" under the Default Order, so Blue Spring was only entitled to collect a maximum of $100,000 from Shenzhenshi. (*Id.* at 333-34). Over the next six months, the parties communicated about the documents Shenzhenshi had provided to demonstrate its ownership of 1st_Fashion and the Amazon Defendants. (Ex. 8, Dkt. 119-8 at 71-76). On December 12, 2025, with no appearance yet on file and without moving to intervene, Shenzhenshi filed a Motion for Relief from Judgment under Rules 60(b)(5) and 60(b)(6). (Dkt. 102). Shenzhenshi argues that Amazon Defendants are aliases of Shenzhenshi, such that Blue Spring is only entitled to collect $100,000 total from them. (Dkt. 103 at 1-2). It asks the Court to enforce the Default Order "as written" and compel Blue Springs to pay $207,864.76, the amount that Blue Spring allegedly wrongfully collected in excess of what it was owed. (*Id.*).

## DISCUSSION

Before addressing the merits of Shenzhenshi's Motion, the Court must address a procedural issue. On December 18, 2025, after filing the Motion, Attorneys Phillip Segrest, Jr. and Kathleen Rheintgen entered their appearances. (Dkt. 115, 117). The docket entries indicate that they appeared on behalf of Amazon Defendants. (*Id.*). Yet, the bodies of the Notices of Appearance state that they represent Shenzhenshi. (*Id.*). Putting this discrepancy aside, Shenzhenshi is not a named defendant, and it has not moved to intervene. Unless and until the Court allows intervention, Shenzhenshi is not a party to this case. *See Saban v. U.S. Dep't of Lab.*, 509 F.3d 376, 379 (7th

4

Cir. 2007) ("But the [non-party], while peppering us with briefs, has never moved to intervene, and so is not a party to this proceeding."). If Shenzhenshi believed that its relationship to Amazon Defendants gave it an interest in this litigation, it should have sought intervention prior to filing this Motion. *See, e.g.*, *Barker v. Loc. 150, Int'l Union of Operating Eng'rs, AFL-CIO*, 2010 WL 934068, at *2 (N.D. Ill. Mar. 11, 2010) (holding that non-party must intervene before filing a motion asking for relief). Nonetheless, Shenzhenshi's attempt to intervene and request for relief are untimely for similar reasons. As such, for the sake of judicial efficiency, the Court will address the Motion as a motion to intervene and a motion for relief from judgment.

## I. Intervention

Pursuant to Federal Rule of Civil Procedure 24, "intervention may be as of right or it may be permissive." Fed. R. Civ. P. 24; *see also Heartwood v. U.S. Forest Serv., Inc.,* 316 F.3d 694, 700 (7th Cir. 2003). Regardless of whether a party is requesting permissive intervention or intervention as of right, the motion to intervene must be "timely." Fed. R. Civ. P. 24; *see also Sokaogon Chippewa Community v. Babbitt,* 214 F.3d 941, 949 (7th Cir. 2000). "The purpose of the [timeliness] requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal." *Id.* at 949 (citations omitted). Courts consider four factors when determining the timeliness of intervention: "(1) [t]he length of time the intervenor knew or should have known of [its] interest in this case, (2) the prejudice to the original party caused by the delay, (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances." *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991). The determination of whether a motion is timely is "committed to the sound discretion of the district judge" and "is made under the totality of the circumstances." *Jeffries v. Swank*, 317 F.R.D. 543, 549 (N.D. Ill. 2016) (citing *South v. Rowe*, 759 F.2d 610, 612 (7th Cir. 1985)).

With respect to the first factor, "[a] prospective intervenor must move promptly to intervene as soon as it knows or has reason to know that its interests might be adversely affected by the outcome of the litigation." *Heartwood, Inc.*, 316 F.3d at 701. A would-be party cannot "watch the litigation proceed for years and then jump in after its end." *Humphrey v. United States*, 787 F.3d 824, 825-26 (7th Cir. 2015). The phrase "knows or has reason to know" means that "potential intervenors cannot claim subjective ignorance of a case's effect on their interests if ordinary diligence would have alerted them of the need to intervene." *Cook Cnty., Illinois v. Mayorkas*, 340 F.R.D. 35, 43 (N.D. Ill. 2021), *aff'd sub nom. Cook Cnty., Illinois v. Texas*, 37 F.4th 1335 (7th Cir. 2022); *see also Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 798 (7th Cir. 2013) (denying intervention where the potential intervenor "could have missed the implications for his [interests] only if he was willfully blind to them"). Second, the phrase "might be adversely affected" requires "prompt intervention when the reasonable possibility, not just a certainty, of an adverse effect on the proposed intervenor's interests arises." *Cook Cnty.*, 340 F.R.D. at 43.

The parties dispute when Amazon Defendants became aware of this lawsuit. Blue Spring argues that they received notice on March 31, 2023 when they were served with the TRO, Complaint, and other service documents through their email addresses provided by Amazon. (Dkt. 118 at 2-3). Shenzhenshi asserts that Amazon Defendants were not aware they had been served because those emails were not monitored regularly, and that they found out about the lawsuit in March 2024 when Defendant ZDHoor realized its Amazon account had been frozen. (Dkt. 103 at 4, 17). Shenzhensi wastes pages arguing over which email addresses Blue Spring should have used to effectuate service. Blue Spring served Amazon Defendants pursuant to Rule 4 and this Court's Order, and ordinary diligence (checking one's business email inbox) would have alerted Amazon

6

Defendants and Shenzhensi of the need to intervene. Furthermore, there is no dispute that 1st_Fashion received notice of the lawsuit on March 24, 2023 through eBay. (Dkt. 103 at 14). Shenzhenshi again tries to claim ignorance by arguing that this notification did not make it aware of Amazon Defendants' involvement in the suit. (Dkt. 103 at 15). Regardless of whether Shenzhenshi knew that Amazon Defendants were named in this case at this time, if Amazon Defendants and 1st_Fashion are related and owned by Shenzhenshi as it contends, then it knew of its interest in this case at that time.

Shenzhenshi did not inform Blue Spring of its relationship to Amazon Defendants and 1st_Fashion until January 24, 2025, almost two years after Amazon Defendants and 1st_Fashion were made aware of the lawsuit and almost one year after Shenzhenshi allegedly found out about Amazon Defendants' involvement. (Dkt. 103-1 at 333-35). This delay, which Shenzhenshi does not even attempt to explain, contradicts Shenzhenshi's assertion that "the issue of affiliation with Shenzhenshi was addressed almost immediately." (Dkt. 103 at 26). It then waited another 11 months before attempting to intervene in this suit and contest the Default Order. (Dkt. 102). Shenzhenshi's counsel attempts to justify this delay by claiming that it was communicating with its client in China, obtaining translations of documents requested by Blue Spring, and trying to settle the matter without the Court's intervention. (Dkt. 103 at 26). These feeble attempts at explanations do not excuse Shenzhenshi's delay in seeking intervention. *See, e.g., Russo et al. v. Walgreen Co.*, 2026 WL 878331, at *10 (N.D. Ill. Mar. 30, 2026) (finding delay in filing motion to intervene unreasonable where prospective intervenor knew about the case for six months and about their potential interests in the case for three months); *Kostovetsky v. Ambit Energy Holdings, LLC*, 242 F. Supp. 3d 708, 730 (N.D. Ill. 2017) (potential intervenor's one-year delay in seeking intervention was unreasonable).

Moreover, any potential prejudice to Shenzhenshi in denying intervention is outweighed by the substantial prejudice to the original parties should intervention be permitted. Blue Spring settled with 1st_Fashion over three years ago, (Ex. 5, Dkt. 103-1 at 120-24), and the case has been terminated for over two-and-a-half years. (Dkt. 95). Motions to intervene after a case is over or parties have settled are almost always denied as untimely. *See, e.g., DeKalb Genetics Corp. v. Mycogen Plant Sci., Inc.*, 2002 WL 31718615, at \*1 n.1 (N.D. Ill. Dec. 2, 2002) ("One cannot intervene in a dismissed case."); *Humphrey*, 787 F.3d at 826 (motion to intervene filed after the parties had already settled was untimely); *see also CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 725–726 (7th Cir. 2015) (same). Finally, there are no unusual circumstances that warrant intervention here. As such, the Court denies Shenzhenshi's attempt to intervene as untimely. *See NAACP v. New York*, 413 U.S. 345, 365 (1973) ("If it is untimely, intervention must be denied."); *Bunge Agribusiness Signapore Pte. Ltd. v. Dallan Hualiang Enter. Grp. Co.*, 2013 WL 3274218, at \*2 (N.D. Ill. June 27, 2013) (denying request to intervene filed 19 months after entry of final judgment and holding "[e]ven if [the Court was] liberally to construe his 'Cross–Complaint' as a motion to intervene, which is the only way he could properly enter this litigation, it comes far too late.").

## II.    Rule 60(b)

Even if Shenzhenshi was permitted to intervene, its request for relief under Rule 60(b) is untimely. Relief under Rule 60(b) "is an extraordinary remedy, granted only in exceptional circumstances." *Willis v. Dart*, 671 F. App'x 376, 377 (7th Cir. 2016) (quotation omitted). Rule 60(b) authorizes a district court to relieve a party from a final judgment for a number of enumerated reasons including, as relevant here, "mistake, inadvertence, surprise, or excusable neglect," when "the judgment has been satisfied, released, or discharged," and, under the "catch-all" provision of

8

the Rule, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (5-6). A motion under Rule 60(b)(1) must be brought within one year after the entry of the judgment, and motions under Rules 60(b)(5) and 60(b)(6) must be made "within a reasonable time". Fed. R. Civ. P. 60(c). A Rule 60(b) motion may be denied on timeliness grounds alone. *See Fairly Odd Treasures, LLC v. Partnerships & Unincorporated Associations Identified on Schedule "A",* 2020 WL 8093511, at *2 (N.D. Ill. Oct. 28, 2020).

Though Shenzhenshi purports to bring the Motion under Rules 60(b)(5) and 60(b)(6), the Court construes it as a Rule 60(b)(1) motion based on the plain language of Shenzhenshi's arguments. *See Siddhar v. Puvalai,* 2019 WL 13210559, at *2 (C.D. Ill. Aug. 6, 2019); *Webb v. Fillipitch*, 2025 WL 2057949, at *1 (N.D. Ill. June 20, 2025) (determining that plaintiff's motion fell under Rule(b)(1) not Rule(b)(6) based on plaintiff's arguments). Shenzhenshi claims it did not act sooner because of Amazon Defendants' "negligence" in monitoring their inbox. (Ex. 4, Dkt. 119 at 49); (Dkt. 103 at 4). It also blames the delay in filing the Motion on communication issues with its counsel and time spent waiting for translations. (Dkt. 103 at 26). Importantly, Shenzhenshi acknowledges the validity of the Default Order and does not contest personal jurisdiction or service. (Dkt. 103 at 2). Thus, analyzing the Motion is appropriate under Rule 60(b)(1) because Shenzhenshi is asking the Court to excuse its mistakes and neglect. *See, e.g., Humphrey v. Sheriff*, 2016 WL 5720355, at *2 (N.D. Ill. Oct. 3, 2016) (reading plaintiff's motion as one based on excusable neglect where plaintiff asked the court to vacate dismissal because her attorney was ill for several months and not aware of the correct courtroom number the day the dismissal was entered); *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (construing motion as one brought under Rule 60(b)(1) where the motion was "simply a plea for the district court to excuse his neglect in prosecuting this case").

9

Shenzhenshi brought this Motion far beyond the one-year cutoff imposed by Rule 60(b)(1), which is enough for this Court to deny it. *See Edwards-Brown v. Crete-Monee 201-U Sch. Dist.*, 491 F. App'x 744, 747 (7th Cir. 2012) (affirming denial of Rule 60(b)(1) motion as time-barred where plaintiff filed it more than one year after the case was dismissed). Even if the Court analyzes the Motion under Rules 60(b)(5) or 6(b)(6), it would be denied because Shenzhenshi did not file it within a reasonable time. Courts in this Circuit routinely find that it is unreasonable for a plaintiff to wait over three months to bring Rule 60(b) motions. *See Miedzianowski v. United States*, 2017 WL 1954543, at *4 (N.D. Ill. May 3, 2017) (collecting cases). Even if the Court accepts Shenzhenshi's contention that it was not aware of the Default Order under March 2024, Shenzhenshi still took almost two years to file this motion. That constitutes an unreasonable delay. *See, e.g, Webb*, WL 2057949, at *2 (one-and-a-half-year delay between entry of order and filing of Rule 60(b) motion was unreasonable); *Acosta v. Ashley's Quality Care, Inc.,* No. 16 C 5393, 2018 WL 1621021, at *4 (N.D. Ill. Apr. 4, 2018) (same); *Philips Med. Sys. (Cleveland), Inc. v. Buan*, 2024 WL 216673, at *10 (N.D. Ill. Jan. 19, 2024) (holding that motion to vacate default judgment filed 14-months after the order was entered was untimely); *Fairly Odd Treasures*, 2020 WL 8093511, at *2 (N.D. Ill. Oct. 28, 2020) (same where motion was brought six weeks after entry of default judgment order).

"Rule 60 does not provide a litigant license to sleep on his rights." *Lobrow v. Vill. of Port Barrington*, 406 F. App'x 60, 61 (7th Cir. 2010) (citing *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1380 (2010)). Shenzhenshi waited over a year and a half to bring this Motion. Its contradictory and half-baked excuses for its tardiness are not compelling. Accordingly, the Court denies the Motion as untimely.

**CONCLUSION**

For the reasons stated above, the Court denies Shenzhenshi's Motion for Relief from Judgment [102].

_____

Virginia M. Kendall

United States District Judge

Date: May 18, 2026